UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN A. OCKER, | Case No. EDCV 12-01510 AN |
| Plaintiff, | MEMORANDUM AND ORDER |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant.[1/] | |

Pursuant to the Court's Case Management Order, the parties have filed the Administrative Record ("AR") and a Joint Stipulation ("JS") raising two disputed issues. The parties have consented to proceed before the Magistrate Judge. The Court has carefully reviewed the parties' respective contentions in conjunction with the AR. This matter is now ready for decision.

///
///
///
///
///

---

[1/] The Acting Commissioner is substituted as the defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. No further action is needed to continue this case by reason of the last sentence of 42 U.S.C. § 405(g).

**Issue #1**

Plaintiff contends that the Administrative Law Judge ("ALJ") erred by rejecting the opinions of his treating physician, David R. Patterson, M.D., and examining psychologist, Laura Seibert, Ph.D., in the evaluation of Plaintiff's physical and mental impairments. (JS 3-7, 11-12.)

Plaintiff, who is a podiatrist, suffered a brain aneurysm on February 27, 2007. (AR 22.) Following his discharge from the hospital, Plaintiff had a 24-hour a day caregiver for a period of time, and later received rehabilitation therapy and physical therapy. (AR 454.) Plaintiff's medical records reflect that in the months following his brain aneurysm, Plaintiff experienced a number of physical and cognitive difficulties, including sleep apnea, headaches, bicep tenderness, rotator cuff tendonitis, colitis, and problems with left motor coordination, speech, short-term memory, executive functions, and gait (e.g., balance, speed, and dizziness while walking). (AR 455, 458, 465, 470, 476, 518, 619, 623, 625, 626, 631, 634, 645, 665, 667, 685, 710, 720, 819.) However, by November 2007, Dr. Patterson reported that Plaintiff's prognosis was excellent. (AR 631.) Plaintiff was still forgetful at times and there was some delay in his responses, but there was no slowing of cognitive processes and his processing was fairly rapid. (AR 631.) Plaintiff's motor examination was grossly functional, with some delay in left motor coordination. (AR 631.) Plaintiff had begun reviewing charts of new patients at his podiatry practice, but was not seeing patients. (AR 631.) By January 2008, one of Plaintiff's doctors noted that Plaintiff had made a "remarkable recovery." (AR 626.) Plaintiff's symptoms of imbalance had resolved, and he was not experiencing headaches, difficulty chewing or swallowing, weakness in his extremities, pain, swelling, or tenderness. (AR 626.) While Plaintiff's executive functions and short-term memory were still affected, his other cognitive functions were intact. (AR 626.) In February 2008, testing of Plaintiff's vision, cognition, and physical functions demonstrated that Plaintiff was safe to resume driving. (AR 761.) In September 2008, Dr. Patterson reported that Plaintiff was working with supervision at his podiatry practice and was trying to regain staff privileges at his former

hospital. (AR 620.) Plaintiff's physical examination showed that his balance was intact, his upper and lower extremities were neurovascularly intact, his sensory examination was grossly functional, and his coordination was grossly functional. (AR 620.) By August 2009, Dr. Patterson reported that Plaintiff was playing golf on a daily basis. (AR 993.) Plaintiff's physical examination and test results were normal, except for mildly elevated triglycerides. (AR 993.) Dr. Patterson recommended that Plaintiff engage in a home exercise program three times per week. (AR 993.)

Despite his findings on examination, Dr. Patterson assessed Plaintiff with substantial work-related limitations in three attending physician's statements prepared for an insurance carrier. (AR 955-60, 1119-20.) On December 13, 2008, Dr. Patterson reported in an attending physician's statement of behavioral health that Plaintiff's brain aneurysm resulted in "moderate" difficulty and a "partial restriction" in memory, concentration, attention, problem solving, and executive functioning. (AR 955-57.) Dr. Patterson opined that Plaintiff's limitations were cognitive based, but Plaintiff was expected to return to full-time work on January 1, 2010. (AR 957.) However, in an attending physician's statement of disability prepared little over a month later on January 27, 2009, Dr. Patterson reported that Plaintiff could perform "no work." (AR 960.) Dr. Patterson found that Plaintiff could climb, balance, stoop, kneel, crouch, and crawl "occasionally" (2.5 hours/day), and could sit, stand, and walk "frequently" (2.5. to 5.5 hours/day). (AR 959-60.) Dr. Patterson made identical findings as to Plaintiff's physical limitations and inability to work in an attending physician's statement dated July 29, 2010. (AR 1119-20.)

In September 2010, Dr. Patterson completed a residual functional capacity ("RFC") questionnaire. (AR 1122-23.) Dr. Patterson reported that Plaintiff suffered from the following symptoms: poor coordination, loss of manual dexterity, difficulty solving problems, problems with judgment, and speech/communication difficulties. (AR 1122.) Dr. Patterson opined that these symptoms were severe enough to interfere with Plaintiff's attention and concentration "frequently." (AR 1122.) While Dr. Patterson opined that

Plaintiff could tolerate low stress jobs, he explained that cognition, rather than stress, restricted Plaintiff from returning to work. (AR 1123.)

Following the administrative hearing, the ALJ determined that Plaintiff suffers from cognitive impairments as a result of his brain aneurysm. (AR 22.) Specifically, the ALJ found that Plaintiff has reduced short-term recall and becomes easily frustrated. (AR 22.) The ALJ assessed Plaintiff with an RFC for work at all exertional levels, and concluded that Plaintiff is able to "perform simple repetitive tasks learned by demonstration," "adapt to occasional changes in the workplace as long as they are concrete in nature rather than abstract," but "should avoid moving equipment, heights and being in charge of safety operations of others." (AR 29.) The ALJ rejected Dr. Patterson's opinion regarding Plaintiff's limitations as set forth in the attending physician's statements and RFC questionnaire, to the extent those limitations conflicted with the ALJ's RFC assessment. (AR 26, 956-60, 1119-20, 1122-23.) The ALJ's evaluation of Dr. Patterson's opinion was supported by substantial evidence. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

The ALJ discounted Dr. Patterson's opinion because it was not adequately supported by clinical or treatment records. (AR 26); *see Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (doctor's opinion properly rejected when treatment notes "provide no basis for the functional restrictions he opined should be imposed"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"); *see also Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by objective medical findings"). As discussed above, Plaintiff made a remarkable recovery after suffering a brain aneurysm in February 2007. (AR 626.) Plaintiff's more recent physical examinations, sensory examinations, and coordination functions were in the normal range. (AR 620, 993); *see Osenbrock v. Apfel*,

240 F.3d 1157, 1165 (9th Cir. 2001) (explaining that a treating physician's most recent medical reports are highly probative); (AR 620.) Dr. Patterson's records did not show objective findings consistent with his conclusion as to Plaintiff's limitations. Indeed, as noted by the ALJ, Dr. Patterson's opinion that Plaintiff suffered from significant physical limitations, including poor coordination and loss of manual dexterity, was inconsistent with Plaintiff's admitted ability to play daily games of golf. (AR 26, 976, 993); *see* 20 C.F.R. § 404.1527(c)(4) (consistency of medical opinion with the record as a whole is one of several factors considered in deciding the weight to give to any medical opinion); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion).

Further, the ALJ properly rejected Dr. Patterson's opinion in favor of the conflicting opinion of the consultative examining neurologist who found that Plaintiff had no limitations beyond those accounted for in the ALJ's RFC. (AR 26, 996); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1989). The testimony from the medical expert who reviewed Plaintiff's medical records also constituted substantial evidence supporting the ALJ's decision, as it was consistent with the medical evidence in the record. (AR 26-29, 51-63); *see Andrews*, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); *Tonapetyan*, 242 F.3d at 1149. Any conflict in the properly supported medical opinion evidence was the sole province of the ALJ to resolve. *Andrews*, 53 F.3d at 1041.

Next, Plaintiff contends that the ALJ failed to adequately consider the opinion of the examining psychologist, Dr. Seibert. (JS 5, 12.) Dr. Seibert examined Plaintiff in November 2007 and August 2008. (AR 819-27, 1125-27.) In August 2008, Dr. Seibert

reported that due to Plaintiff's cognitive impairments, which consisted primarily of short-term memory and executive functioning deficits, Plaintiff should not return to work at his podiatry practice without supervision from another practitioner. (AR 825-26, 1126-27.) Dr. Seibert also considered Plaintiff unsafe to drive even though one physician had determined that Plaintiff was capable of driving. (AR 761, 826.) In March 2009, Dr. Seibert completed an attending physician's statement for an insurance carrier. (AR 1125-29.) Dr. Seibert opined that Plaintiff was "permanently disabled," as Plaintiff was unable to perform any independent, clinical work and could not resume his pre-stroke professional activities. (AR 1127.)

      The ALJ thoroughly considered Dr. Seibert's opinion and gave it "considerable weight." (AR 26.) The ALJ explained that Dr. Seibert's finding that Plaintiff was unable to return to his former work as a podiatrist was consistent with the administrative decision. (AR 26.) The ALJ accounted for Dr. Seibert's findings as to Plaintiff's short-term memory and executive functioning deficits in Plaintiff's RFC assessment. (AR 25-26, 29.) Further, the ALJ determined that Plaintiff had moderate restrictions in activities of daily living and concentration. (AR 22-23.) Thus, the ALJ's evaluation of Dr. Seibert's opinion is supported by substantial evidence.

      Finally, Plaintiff contends that the ALJ erred by finding that Plaintiff's impairments do not meet or equal the specifications of the impairments described in section 12.02 for "Organic Mental Disorders." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.02. (JS 5, 12.) Specifically, Plaintiff asserts that he meets or equals the criteria set forth in paragraph C of section 12.02, which provides as follows:

> Medically documented history of a chronic [organic mental disorder or affective disorder] of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or

  2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

  3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02(c).

  The ALJ noted that Plaintiff had not had repeated episodes of decompensation, and there was no evidentiary support that Plaintiff is likely to decompensate in response to a minimal increase in mental demands or change in environment, or that Plaintiff has a history of an inability to function outside a highly supportive living arrangement of one or more years. (AR 23); *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02(c). While Plaintiff alleges that he suffers from a variety of debilitating symptoms, the ALJ found those allegations not credible to the extent they were inconsistent with the ALJ's RFC assessment, as discussed in detail below. (AR 24.)

  Accordingly, the Court rejects Plaintiff's contention that reversal is warranted based on Issue #1.

### Issue #2

  Plaintiff contends the ALJ failed to give specific, clear and convincing reasons for rejecting his subjective complaints regarding the severity of his symptoms and limitations. (JS 12-16, 18-20.) At the hearing, Plaintiff testified that since suffering his brain aneurysm, he does not handle any financial responsibilities, has trouble following recipes, drives only short distances, needs to use a calculator to determine his golf scores, and has difficulty remembering to do simple tasks (e.g., running errands, taking medication, and making lunch). (AR 45-51.) In sum, Plaintiff testified that his short-term memory problem prevents him from performing any type of work. (AR 45.)

  The ALJ provided valid reasons for discounting Plaintiff's allegations regarding

the extent, persistence, and limiting effect of his symptoms. For example, the ALJ found that Plaintiff's reports to his physicians that he was playing golf on a daily basis indicated that Plaintiff was living a lifestyle consistent with retirement and that he had no intention of trying to perform some kind of work, such as rudimentary unskilled work. (AR 25, 976, 993.) While a claimant need not "vegetate in a dark room," *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), the Ninth Circuit also holds that "'where the evidence is susceptible to more than one rational interpretation,'" the ALJ's decision must be upheld if his interpretation was rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). Here, while Plaintiff reported some difficulty calculating his golf scores, the ALJ properly considered Plaintiff's daily games of golf as inconsistent with his claim that his impairments preclude him from being able to perform any kind of work. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (finding that the ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant). In addition, Dr. Seibert recommended that Plaintiff undergo a neuropsychological re-evaluation in August 2009 if he continued to aspire to return to work. (AR 25, 826-27, 1126.) The ALJ found that Plaintiff never returned to Dr. Seibert for a re-evaluation. (AR 25.) A rational reading of the record supports the ALJ's finding that Plaintiff's golf activities and failure to seek a re-evaluation from Dr. Seibert were inconsistent with his claim of disability. (AR 25); *Burch*, 400 F.3d at 680-81; *Smolen*, 80 F.3d at 1284.

The ALJ further found that the limiting effect of his symptoms on his daily activities was not reasonably supported by the objective medical evidence. (AR at 24-26.) The ALJ discussed the medical evidence in detail in the decision. (AR 24-29.) In addition, the ALJ noted that Dr. Seibert did not find that Plaintiff was cognitively unable to perform all types of work. (AR 25, 826.) Rather, Dr. Seibert actually recommended that Plaintiff explore work-related activities. (AR 27, 826.) While subjective symptom

testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. 20 C.F.R. § 404.1529(c)(2); *Rollins*, 261 F.3d at 857 (objective medical evidence may not be sole reason for discounting credibility but is nonetheless a legitimate and relevant factor to be considered in assessing credibility). Thus, the ALJ offered specific, clear and convincing reasons, supported by substantial evidence for discounting Plaintiff's subjective symptom testimony.

Accordingly, Plaintiff's second disputed issue does not warrant reversal of the Commissioner's final decision.

**ORDER**

The Court finds that the ALJ's determination of non-disability is free of legal error and supported by substantial evidence in the record. Therefore, Plaintiff's request for an order directing the payment of benefits or remanding this case for further proceedings is DENIED, and the Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is GRANTED. The clerk shall enter judgment, close the file and terminate all pending motions.

DATED: July 29, 2013

_____
ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE